IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| JEFFREY L. MERRELL, | CASE NO. 8:11CV74 |
| **Plaintiff,** | |
| vs. | |
| DOUGLAS COUNTY, NEBRASKA, JEFFREY NEWTON, BARBARA GLAZER, WAYNE LOVETT, JOHN SKANES, MICHAEL MYERS, and MARK FOXALL, | MEMORANDUM AND ORDER |
| **Defendants.** | |

This matter is before the Court on the Defendants' Motion for Summary Judgment (Filing No. 65). The parties have submitted briefs (Filing Nos. 66, 72, 73, 77) and indexes of evidence (Filing Nos. 67, 68, 71) in support of their respective positions. For the reasons stated below, the Defendants' Motion will be granted.

## BACKGROUND

Unless otherwise noted, the following facts are those that are stated in the parties' briefs and supported by pinpoint citations to admissible evidence[1] in the record, that the parties have admitted, and that the parties have not properly resisted as required by NECivR 56.1 and Fed. R. Civ. P. 56.

Defendant Douglas County, Nebraska ("Douglas County"), is a political subdivision of the State of Nebraska. Plaintiff Jeffrey L. Merrell ("Merrell") was formerly employed by Douglas County as a corrections sergeant for the Douglas County Corrections Center ("DCCC"), which is operated by the Douglas County Department of

---

[1] The Court notes Merrell objects to certain evidence offered by the Defendants on hearsay grounds. The Court will only consider that evidence for its non-hearsay purposes. Merrell also objects to certain evidence offered by the Defendants on relevance grounds. The Court will only consider the parties' evidence to the extent that it is relevant to Merrell's claims or the Defendants' defenses.

Corrections ("DCDC").  He was also a member of the Fraternal Order of Police Lodge No. 8 ("FOPL").  At all times relevant to this action, Defendant Barbara Glaser ("Glaser")[2] was the corrections programs administrator for the DCDC and supervised inmate recreation and education, and the inmate law library.[3]  Defendant Jeffery Newton ("Newton")[4] served as the DCDC's director from December 4, 2006, to July 15, 2011, and was responsible for the DCDC's operations, for establishing its policies and procedures, and for making disciplinary and employment decisions.  At all times relevant to this action, Defendant Mark Foxall ("Foxall") was the deputy director of the DCDC.  He assisted Newton with certain personnel matters, such as disciplinary actions.  Defendant John Skanes ("Skanes") is the work release administrator for the DCDC.  Defendant Wayne Lovett ("Lovett") is the admissions manager for the DCDC. Defendant Michael Myers ("Myers") is the community corrections manager for the DCDC.

The FOPL entered into an agreement with Douglas County, effective July 1, 2006, that incorporated Douglas County's civil service regulations and the DCDC's standard operating procedures, and expressly reserved to the DCDC management the authority to establish work rules, regulations, and other terms and conditions of employment for covered employees.  Merrell was expected, as a DCDC employee, to

---

[2] Merrell's Amended Complaint provides a different spelling for this defendant's last name: "Glazer."  (*See* Filing No. 63.)  The Court will use the spelling provided by the Defendants.

[3] Glaser died February 21, 2013.  (Filing No. 59.)  The Defendants note that "[n]o further action has taken place regarding Ms. Glaser's passing.  To the extent Ms. Glaser is named in her official capacity, Plaintiff asserts a claim against Defendant Douglas County and this brief, accompanying Index, and motion for summary judgment are intended to address such claim."  (Filing No. 66 at 2 n.1.)

[4] Merrell's Second Amended Complaint provides a different spelling for this defendant's first name: "Jeffrey."  (*See* Filing No. 63.)  The Court will use the spelling provided by the Defendants.

2

be familiar with and follow the DCDC's policies and procedures, one of which required that co-workers treat each other in a professional manner.

Douglas County has an official policy that affords employees potentially subject to discipline a pre-disciplinary hearing.   (*See* Filing No. 67-5 at CM/ECF pp. 62-63.) That policy states:

> a.   It is the policy of Douglas County to allow an employee the opportunity to respond to allegations made which may justify their being suspended, demoted, or terminated.   The Pre-Disciplinary Hearing is designed to provide an initial check against mistaken decisions and to assist the Elected Official/Department Head or designee in making a determination as to whether there are reasonable grounds to believe that the allegations against the employee are true and support the proposed actions.   The employee is entitled to (1) written notice of the pending allegations, (2) an explanation of the employer's evidence, and (3) an opportunity to present an argument/evidence as to why disciplinary action should not occur. . . .
>
> f.   While the mechanism surrounding a Pre-Disciplinary Hearing has been described in some detail, it should be remembered that the hearing itself is intended to be a somewhat informal session with each participant having the ability to exchange information and come to an understanding of the issues involved and their importance.   It shall be seen as an opportunity to clarify any misunderstanding and provide a basis for future utilization of the employee's potential as well as a means to determine the authenticity of the alleged misconduct.

(*Id.* at CM/ECF p. 62, Art. 22, § 6.)   When a DCDC employee submits a complaint against another employee, the DCDC's office of professional review ("OPR") reviews the matter and then recommends a particular disposition to Newton.   If the employee challenges the OPR's recommendation, the OPR assembles a three-person panel for the pre-disciplinary hearing.   Panel members must be unrelated to the individuals involved in the underlying events, and must be senior in position to the person potentially subject to discipline.

Douglas County's policy also states that "the right to appeal suspensions, demotions, and terminations . . . is established by Nebraska statute." (*Id.* at CM/ECF p. 64, Art. 23, § 1.)   Nebraska statutes provide an employee the right to appeal a disciplinary action to the Douglas County Civil Service Commission, and state that no disciplinary decision is final until the Douglas County Civil Service Commission issues its ruling.  *See* Neb. Rev. Stat. §§ 23-2510, 23-2511.  The ruling of the Douglas County Civil Service Commission may be appealed to the Douglas County District Court, and then to Nebraska's appellate courts.  *See* Neb. Rev. Stat. §§ 23-2515, 25-1911.

In late 2008 and early 2009, a woman named Blythe Bowman ("Bowman") was in charge of the DCCC's law library and was responsible for coordinating inmate requests to visit the library.  In early February 2009, Bowman submitted a written complaint to the DCDC, alleging that Merrell directed comments and conduct towards her that resulted in a negative impact on inmates' visits to the law library.  Two other female staff members had submitted complaints similar to Bowman's.  Based on the information available to them, Newton and Foxall believed there was merit to Bowman's complaint and that Merrell should be disciplined since working with co-workers was an essential part of being a corrections officer, especially for someone in the supervisory role of corrections sergeant.

Skanes, Lovett, and Myers were selected to serve on the panel at Merrell's pre-disciplinary hearing relating to Bowman's complaint.  Skanes and Lovett do not know why they were selected to the panel; Myers did not know a particular reason he was selected to be on the panel other than his rank was senior to Merrell's.  Prior to the hearing: none of the panel members talked to Newton or Foxall about Merrell's

4

interactions with Bowman; Skanes was unaware of Bowman's complaint against Merrell, did not know Merrell or Bowman, and had no reason to believe that Bowman had an ulterior motive when filing her complaint; Lovett was also unaware of Bowman's complaint, and although he knew Merrell, his prior associations with Merrell were neutral; and Myers did not know Merrell or Bowman, and had no reason to believe Bowman had an ulterior motive in filing the complaint against Merrell.

On or about February 25, 2009, Merrell received a list of evidence related to Bowman's complaint against him.  On March 5, 2009, he received a copy of the charge against him, listing several policies he was alleged to have violated.  (Aff. of Jeffrey L. Merrell, Filing No. 71-6 at ¶ 4; Pre-Disciplinary Hearing Notice, Filing No. 71-8.)

Merrell's pre-disciplinary hearing occurred on March 11, 2009.  Merrell attended the hearing and was represented by two FOPL representatives.  Glaser did not attend the hearing.  At the pre-disciplinary hearing, Merrell had an opportunity to review the documents before the panel, respond to them, and to offer his own documents.  He was allowed to present whatever evidence he desired, and had the ability to call Bowman as a witness.  The panel members considered written reports as well as the evidence Merrell presented to them.  They then weighed the facts against DCDC policy and made a recommendation to Newton, finding in favor of Merrell with respect to certain policy provisions.  Although Merrell contends that he sufficiently addressed Bowman's complaint, the panel members did not believe he did, and the hearing concluded.

After Merrell left, Bowman spoke with Myers and Lovett.  Someone from the OPR told Myers that it was appropriate to have Bowman demonstrate one of the interactions described in a written report the panel had reviewed.  Meyers then asked Bowman to

5

demonstrate that interaction, and Bowman did.  Meyers believed it was consistent with Merrell's verbal description of the interaction.  The panel recommended to Newton that Merrell be suspended for three days, and in accordance with the panel's recommendation, Newton imposed a three-day suspension on Merrell, which would not disrupt any of Merrell's benefits.

The panel members thought due process had been afforded to Merrell at the pre-disciplinary hearing because they believed he received notice of the pre-disciplinary hearing, he received an explanation of the evidence against him, and he had an opportunity to respond.  After the hearing, none of them talked to Newton or Glaser about Merrell.   Merrell contends that he did not receive an explanation of all the evidence against him, asserting that his notice of suspension referred to evidence that had not been presented to him before or during his pre-disciplinary hearing; that the panel's recommendation to Newton reflected that Merrell was accused of having documents at the hearing that he was not supposed to have but that he did not receive notice of this accusation prior to the hearing and was not provided an opportunity at the hearing to respond to the accusation[5]; and that, "[i]n the absence of Bowman testifying as to the context and specific things said and done," he could not respond to the allegations against him because they were too generalized and vague.  (Filing No. 71-6 at ¶¶ 5-7.)  He also asserts DCDC's policy impermissibly required him to disprove Bowman's allegations.

---

[5] Although the panel's recommendation indicates that the members found it concerning that Merrell had certain documents in his possession (Filing No. 71-10 at CM/ECF p. 2), a comparison of the official letter of suspension Merrell received (Filing No. 71-11) to the pre-disciplinary hearing notice Merrell received (Filing No. 71-8), indicates that Merrell's discipline was only for the charge reflected in his pre-disciplinary hearing notice.

A day or two after the pre-disciplinary hearing, Bowman spoke with Glaser, and mentioned that she had talked with the panel members.  Bowman did not mention to Glaser that Merrell and his representatives were not present at the time.  This was the only conversation Glaser had with Bowman about Bowman's interaction with Merrell.

 Merrell appealed his three-day suspension to the Douglas County Civil Service Commission.  A hearing was held for his appeal on May 7, 2009, which Merrell attended, represented by counsel.  Merrell had a right to subpoena witnesses for the hearing.  At the hearing, he had the right to offer exhibits and to question adverse witnesses, and was able to cross-examine Bowman.  During the cross-examination of Bowman, Bowman testified that she talked to panel members after the pre-disciplinary hearing and outside the presence of Merrell or his representatives.  This was first time Newton heard that Bowman had talked to panel members outside the presence of Merrell or one of his representatives.  Newton had never encountered this type situation before, and instead of proceeding further with the hearing, he withdrew the charges against Merrell.

Newton did not discipline anyone involved with Merrell's pre-disciplinary hearing, including the individual from the OPR who advised Myers that it was appropriate to talk to Bowman after the pre-disciplinary hearing and outside of Merrell's presence.  Newton did not believe anyone's conduct was sufficiently egregious to warrant discipline.  OPR personnel, however, were reminded that no evidence was to be presented at a pre-disciplinary hearing outside the presence of the subject employee and a union representative.

Merrell did not return to work after March 13, 2009.  Newton did not know if Merrell would be returning to work, although he assumed Merrell would.  As Merrell came close to running out of accrued leave time, Newton reminded Merrell that his FOPL contract gave him the option of requesting an unpaid leave of absence for a temporary disability.  Merrell, however, did not make such a request.  One of Merrell's treating doctors reported that Merrell was unable to return to work for psychiatric reasons that resulted from the accusations against him, how he was treated during the pre-disciplinary hearing, and the outcome of the pre-disciplinary hearing.  (Aff. of Bruce Gutnik & Gutnik Reports, Filing Nos. 71-3, 71-4, 71-5.)

On April 14, 2009, Merrell filed with the Nebraska Equal Opportunity Commission ("NEOC") a charge of discrimination and retaliation on the basis of race, color, sex, age, and disability against Douglas County.  On October 27, 2009, Merrell filed with the NEOC a second charge of discrimination and retaliation against Douglas County.

Without having served a notice of claim letter on Douglas County,[6] on February 24, 2011, Merrell initiated this action.  On March 11, 2013, Merrell filed his Second Amended Complaint (Filing No. 63), asserting three claims for relief.  First, he alleges that, pursuant to § 1983, his procedural due process rights were violated due to the circumstances surrounding his pre-disciplinary hearing.  Second, he alleges that, pursuant to § 1983, his rights under the First Amendment were violated because he

---

[6] In a footnote, the Defendants assert that this provides an independent ground for dismissing Merrell's claims to the extent they are asserted against Douglas County.  (Defs.' Br., Filing No. 66 at CM/ECF pp. 49-50 n.7 (citing Neb. Rev. Stat. §§ 13-902, 13-919(1); *Jessen v. Malhotra*, 665 N.W.2d 586, 590 (Neb. 2003); *Chicago Lumber Co. of Omaha v. Sch. Dist. No. 71 of Milligan, Fillmore Cnty.*, 417 N.W.2d 757, 764 (Neb. 1988); *Campbell v. City of Lincoln*, 240 N.W.2d 339 (Neb. 1976))).  For the reasons stated below, even if Merrell had served a notice of claim letter on Douglas County, Merrell has failed to evidence sufficient to establish the claims he has asserted against any of the Defendants.

8

"was harassed, retaliated against, and terminated" for "making complaints about the Defendants." (*Id.* at CM/ECF p. 12.)  Third, he alleges that some or all of the Defendants engaged in a conspiracy to harass and terminate him in violation of state law and 42 U.S.C. § 1985.  The Defendants' filed their Motion on May 13, 2013, requesting that the Court grant summary judgment in their favor with respect to all three of Merrell's claims.

## STANDARD

"Summary judgment is appropriate when the record, viewed in the light most favorable to the non-moving party, demonstrates there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Gage v. HSM Elec. Prot. Serv., Inc.,* 655 F.3d 821, 825 (8th Cir. 2011) (citing Fed. R. Civ. P. 56(c)). The court will view "all facts in the light most favorable to the non-moving party and mak[e] all reasonable inferences in [that party's] favor." *Schmidt v. Des Moines Pub. Sch.*, 655 F.3d 811, 819 (8th Cir. 2011).  However, "'facts must be viewed in the light most favorable to the nonmoving party only if there is a "genuine" dispute as to those facts.'" *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009) (quoting *Scott v. Harris,* 550 U.S. 372, 380 (2007)).

"If the *moving* party will bear the burden of persuasion at trial, that party must support its motion with credible evidence . . . that would entitle it to a directed verdict if not controverted at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 331 (1986).  . "[W]here the *nonmoving* party will bear the burden of proof at trial on a dispositive issue . . . Rule 56(e) permits a proper summary judgment motion to be opposed by any of the

kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves." *Id.* at 324 (emphasis added).

In response to the movant's showing, the nonmoving party's burden is to produce "evidentiary materials that demonstrate the existence of a 'genuine issue' for trial." *Id.* at 331. "[T]he absence of an adequate response by the nonmovant, even after the moving party has carried its initial burden of production, will not automatically entitle the movant to entry of summary judgment." *Lawyer v. Hartford Life & Acc. Ins. Co.*, 100 F. Supp. 2d 1001, 1008 (W.D. Mo. 2000) (citing *Celotex*, 477 U.S. at 331). Instead, "the moving party must show that the evidence satisfies the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Id.* (citing *Celotex*, 477 U.S. at 331).

In other words, where the Court finds that "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party"–where there is no "'genuine issue for trial'"–summary judgment is appropriate. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.,* 391 U.S. 253, 289 (1968)).

## DISCUSSION

With respect to Merrell's due process claim, the Defendants contend they are entitled to summary judgment because uncontroverted evidence in the record reflects Merrell's procedural due process rights were not violated, and to the extent they may have been, the Defendants are entitled to qualified immunity. With respect to Merrell's First Amendment retaliation claim, the Defendants contend that they are entitled to summary judgment because Merrell has failed to show he engaged in protected speech

10

or conduct and because he has failed to show a causal connection between any such speech or conduct and his suspension or termination.   With respect to Merrell's conspiracy claim, the Defendants contend that they are entitled to summary judgment because Merrell has failed to point to any evidence indicating that a conspiracy existed. Merrell argues that he has pointed to evidence sufficient to create an issue of fact with respect to each of his claims.

## I. Procedural Due Process Claim & Qualified Immunity Defense

To establish his procedural due process claim, Merrell must satisfy a two-step test: he must show (1) that the Defendants deprived him of an interest protected by the due process clause of the United States Constitution[7]; and (2) that the Defendants deprived him of that protected interest without due process of law.   *Smutka v. City of Hutchinson*, 451 F.3d 522, 526 (8th Cir. 2006); *see also de Llano v. Berglund*, 282 F.3d 1031, 1034 (8th Cir. 2002) (citing *Krentz v. Robertson Fire Prot. Dist.,* 228 F.3d 897, 902 (8th Cir.2000)).

"An essential principle of due process is that a deprivation of life, liberty, or property 'be preceded by notice and opportunity for hearing appropriate to the nature of the case.'" *Loudermill*, 470 U.S. at 542 (quoting *Mullane v. Cent. Hanover Bank & Trust Co.,* 339 U.S. 306, 313 (1950)).   "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner."   *Winegar v. Des Moines Indep. Cmty. Sch. Dist.*, 20 F.3d 895, 899-900 (8th Cir. 1994) (citing *Mathews v. Eldridge,* 424 U.S. 319, 333 (1976)).   Thus, "[d]ue process is a flexible

---

[7] It is "federal law, not state law or [an organization's] policy, [that] determines what constitutes adequate procedural due process."   *de Llano*, 282 F.3d at 1035 (8th Cir. 2002) (citing *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541 (1985)).   Thus, even if an organization's internal procedures are violated, the plaintiff is left with, at most, a state law cause of action.   *Id.*

11

concept that varies with the particular situation." *Id.* at 900 (citing *Zinermon v. Burch,* 494 U.S. 113, 127 (1990)).

When the situation involves the termination of "'[a] public employee with a protected property interest in continued employment," the employee "receives sufficient due process if he [or she] receives notice, an opportunity to respond to the charges before his [or her] termination, and post-termination administrative review.'" *Floyd-Gimon v. Univ. of Ark. for Med. Scis. ex rel. Bd. of Trs. of Univ. of Ark.*, 716 F.3d 1141, 1146 (8th Cir. 2013) (third and fourth alterations in original) (quoting *Young v. City of St. Charles, Mo.*, 244 F.3d 623, 627 (8th Cir.2001)).   The greater the post-disciplinary process available to the employee, the less elaborate the pre-disciplinary process must be. *See Christiansen v. W. Branch Cmty. Sch. Dist.*, 674 F.3d 927, 934 (8th Cir. 2012) ("Due process does not require elaborate pre-termination procedures, especially where meaningful post-termination process is available.").   For example, even in the termination context, when post-disciplinary proceedings are available, the Eighth Circuit has "consistently held that . . . 'informal meetings with supervisors' may be sufficient pre-termination hearings." *Sutton v. Bailey*, 702 F.3d 444, 447 (8th Cir. 2012) (quoting *Schleck,* 939 F.2d at 641).   When the situation involves a "mere suspension," even lesser process may comport with due process. *See Winegar*, 20 F.3d at 900. *See also Oswald v. Waterloo Bd. of Educ.*, No. C02-2050, 2003 WL 22284654, at *7-9 (N.D. Iowa Sept. 22, 2003).

It appears that the Defendants do not dispute, at least for purposes of the present Motion, that under the applicable standard of review, a jury could find that Merrell had a protected interest in his employment with the DCDC.  (*See* Defs.' Br.,

12

Filing No. 66 at 16.)  Therefore, the Court will assume Merrell had a protected property interest in his employment with the DCDC.  Even if Merrell had a protected interest in his employment with the DCDC, the record does not reflect that the Defendants deprived him of that interest without due process of law.[8]

The Defendants contend that Merrell's post-suspension hearing cured any due process violation that may have occurred leading up to and during Merrell's pre-suspension hearing.  Merrell focuses solely on the circumstances surrounding the pre-suspension hearing to support his procedural due process claim, and contends that lifting his suspension did not cure the due process violations that had already occurred. He relies on *Martin v. Neb. Dep't of Pub. Insts.*, 584 N.W.2d 485 (Neb. Ct. App. 1998), to support his contention that his post-suspension proceeding did not cure the alleged pre-suspension due process violation.

The Nebraska Court of Appeals in *Martin* found "the authority providing that posttermination proceedings do not cure violations of pretermination due process to be better reasoned."  *Id.* at 491.   *Martin*, however, was expressly overruled by the Nebraska Supreme Court in *Scott v. Cnty. of Richardson*, 789 N.W.2d 44, 52 (Neb. 2010)[9], and is contrary to Eighth Circuit authority.   *See Smutka*, 451 F.3d at 528

---

[8] While the parties' dispute, and therefore the Court's analysis, focuses on the process afforded to Merrell leading up to his suspension and not whether Merrell's was deprived of a property interest when he was suspended, the Court notes that other courts have found short-term suspensions do not trigger due process concerns, at least when the suspension does not affect the employee's pay, benefits, or reputation.  *See, e.g.*, *Pitts v. Bd. of Educ. of U.S.D. 305, Salina, Kansas*, 869 F.2d 555, 556 (10th Cir. 1989); *Oswald*, 2003 WL 22284654, at *6.

[9] "We hold that deficiencies in due process during pretermination proceedings may be cured if the employee is provided adequate posttermination due process. . . . To the extent that *Martin* holds to the contrary, it is expressly overruled."  *Scott*, 789 N.W.2d at 52.

13

(quoting *Krentz*, 228 F.3d at 902) ("We have further explained, '[E]xtensive post-termination proceedings may cure inadequate pretermination proceedings.'").

Considering the pre- and post-suspension proceedings together, even if some of the circumstances surrounding the pre-suspension hearing were improper, no reasonable finder of fact could conclude that the Defendants deprived Merrell of a protected interest in his employment without due process of law. The record reflects that Merrell was facing a "mere suspension"; he received notice of the evidence and ultimate charge against him both prior to and at his pre-suspension hearing; at his pre-suspension hearing, he had an opportunity to respond to the charges and the evidence against him, which included the opportunity and ability to call Bowman as a witness; and when he appealed his suspension, he had a second opportunity to address the charges and evidence against him, and an opportunity to address the allegedly improper circumstances that surrounded his pre-suspension hearing.[10]   Therefore, the Court will

---

[10] At a minimum, the Court does not believe a reasonable official would have understood that suspending Merrell without more elaborate procedures than that which Merrell received violated Merrell's procedural due process rights. *See Solomon v. Petray*, 699 F.3d 1034, 1038 (8th Cir. 2012) (internal citations omitted) ("Analyzing a claim of qualified immunity requires a two-step inquiry. In one step, the deciding court determines whether the facts demonstrate a deprivation of a constitutional right. In the other, the court determines whether the implicated right was clearly established at the time of the deprivation."); *Sutton*, 702 F.3d at 447-48 (alteration in original) (quoting *Powell v. Mikulecky*, 891 F.2d 1454, 1457 (10th Cir.1989)) (internal quotation marks omitted) ("The qualified immunity question, then, is 'whether the contours of the pretermination procedural due process rights announced in [*Loudermill*], and applied in lower court cases interpreting that decision, were sufficiently clear that a reasonable official would understand that terminating [Sutton] without a more elaborate hearing than that which he received violated those procedural rights.'").   *See also Floyd-Gimon*, 716 F.3d at 1147 (finding no due process violation when employee was terminated at an informal meeting with her supervisors for allegedly altering patient records even though the employee never formally received specific details surrounding her termination, was not allowed to see any of the allegedly altered records, and was not afforded a formal, post-termination hearing; *Riggins v. Bd. of Regents of Univ. of Neb.*, 790 F.2d 707, 711 (8th Cir. 1986) (finding a public employee's procedural due process rights were not violated when the defendant failed to provide proper notice of certain evidence because that evidence was only a "minor part" of the decision to terminate the employee and the employee had received adequate notice of the ultimate reason for her discharge); *Oswald*, 2003 WL 22284654, at *7 (finding the "plaintiff was afforded all the due process he was due" even though a witness made statements to the disciplinary board outside of the presence of the plaintiff and his attorney because "the comments made were already contained in the record or were

14

grant the Defendants' Motion to the extent they seek the dismissal of Merrell's procedural due process claims.[11]

## II. First Amendment Retaliation

Merrell has alleged that the Defendants "harassed, retaliated against, and terminated" him in violation of his First Amendment rights. (Second Am. Compl., Filing No. 63 at CM/ECF p. 12.) To establish his retaliation claim, Merrell first must establish his prima facie case of retaliation, which requires him to show that (1) he engaged in activity protected by the First Amendment, (2) he suffered an adverse employment action, and that (3) the protected activity and the adverse employment action are causally connected. *Butler v. Crittenden Cnty., Ark.*, 708 F.3d 1044, 1051 (8th Cir. 2013); *Hughes v. Stottlemyre*, 506 F.3d 675, 678 (8th Cir. 2007). Merrell bears the burden of demonstrating that his activity is protected by the First Amendment. *Altonen v. City of Minneapolis*, 487 F.3d 554, 559 (8th Cir. 2007). "Whether expressive activity is protected by the First Amendment is a legal question." *Id.* (citing *Schilcher v. Univ. of Ark.*, 387 F.3d 959, 963 (8th Cir.2004)).[12]

---

completely consistent with it."); *Schleck*, 939 F.2d at 642 (finding employees' supervisor entitled to qualified immunity where employees were terminated at an informal hearing with their supervisor, even though the supervisor did not disclose the accusers' names, the names of everyone interviewed when investigating the charges of sexual harassment, or in general, "all of the details of the charges against" the employees).

[11] The Defendants also argue that Merrell failed to establish a substantive due process claim. A review of Merrell's Second Amended Complaint and his opposition brief indicates that Merrell has not attempted to assert a substantive due process claim. Therefore, the Court does not address that issue.

[12] If Merrell can establish his prima facie case, the burden shifts to the Defendants "to demonstrate that it would have taken the same action regardless of her First Amendment activities." *Id.* (citing *Hughes v. Stottlemyre,* 454 F.3d 791, 796 (8th Cir.2006)). If the Defendants meet their burden of showing that it had a legitimate, nondiscriminatory reason for their actions, the burden shifts back to Merrell to show the Defendant's actions were pretextual. *See Morris v. City of Chillicothe*, 512 F.3d 1013, 1019 (8th Cir. 2008). As will be explained below, the Court finds that Merrell has not established his prima facie case. The Court need not proceed further with its analysis.

The Defendants do not dispute that Merrell's suspension and termination constitute adverse employment actions. They contend, however, that summary judgment should be entered in their favor because Merrell has failed to point to evidence sufficient to show that he engaged in conduct protected by the First Amendment, or that there was a causal connection between his allegedly protected conduct and his suspension or termination. Merrell suggests that the "disclosures [he made] about problems with certain co-employees about false allegations being made against him" constitute protected speech because "[f]alse allegations involving public employees is a public interest not just a private interest." (*See* Pl.'s Br., Filing No. 72 at CM/ECF p. 22 & n.31.) Merrell does not appear to address the third element of his First Amendment retaliation claim in his opposition brief, but concludes that he "has adduced sufficient evidence of this claim for summary judgment purposes." (*See id.*)

The First Amendment protects speech and conduct only "if it relates to a matter of public concern[.]" *Altonen*, 487 F.3d at 559. Although speech and conduct may "relate[ ] both to an employee's private interests as well as matters of public concern, [it] is protected if it is primarily motivated by public concern." *Id.* (citing *Bailey v. Dep't of Elem. & Secondary Educ.*, 451 F.3d 514, 518 (8th Cir.2006)). In other words, "[i]f the main motivation for the speech was furthering [the plaintiff's] 'private interests rather than to raise issues of public concern, h[is] speech is not protected, even if the public would have an interest in the topic of h[is] speech.'" *Id.* A plaintiff's motivation "is determined by evaluating . . . content, form, and context." *Id.*

While allegations involving a public employee may be of public interest, Merrell has failed to satisfy his burden of demonstrating that he engaged in protected activity.

16

The record reflects that all of Merrell's complaints were motivated to address and correct what he perceived to be an undesirable work environment resulting from allegedly false accusations against him, matters personal to Merrell.  Merrell has not provided the Court with any reason to believe that he engaged in any conduct "as a concerned citizen attempting to inform the public about h[is] government employer's practices."  *Id.* at 560.  Therefore, Merrell has not established his prima facie case of retaliation, and the Defendants' Motion will be granted to the extent they seek the dismissal of Merrell's First Amendment retaliation claim.

## III.  Civil Conspiracy Under State Law and § 1983

For his third and final theory of recovery against the Defendants, Merrell alleges "[t]hat some or all of the various Defendants engaged in a conspiracy to harass and terminate [Merrell]."  (Second Am. Compl., Filing No. 63 at CM/ECF p. 13.)  Merrell must prove four elements to recover on his § 1985 conspiracy claim[13]:

---

[13] As the Defendants note, Merrell does not specify the subsection of § 1985 under which he brings his conspiracy claim.  (Defs.' Br., Filing No. 66 at CM/ECF p. 46 n.6.)  The Defendants assert "the context of [Merrell's] Second Amended Complaint indicates that he alleges a conspiracy to violate his civil rights, actionable under § 1985(3)."  (*Id.*)  Merrell does not dispute that he brings his § 1985 claim pursuant to subsection (3), and the Court agrees that the context of Merrell's Second Amended Complaint, as well as the allegations contained in his opposition brief to the Defendants' Motion, indicate that Merrell brings his § 1985 claim pursuant to subsection (3).

The Court also notes that Merrell does not specify what state law he believes forms the basis of his conspiracy claim.  The Court will assume that Merrell has asserted a claim of civil conspiracy under Nebraska law.  Under Nebraska law, "[a] civil conspiracy is a combination of two or more persons to accomplish by concerted action an unlawful or oppressive object, or a lawful object by unlawful or oppressive means."  *Eicher v. Mid Am. Fin. Inv. Corp.*, 748 N.W.2d 1, 15 (Neb. 2008).  To be actionable, "the alleged conspirators [must] [have] actually committed some underlying misconduct."  *Id.*  In other words, a civil conspiracy claim merely "serves to impose vicarious liability for the underlying tort of those who are a party to the conspiracy."  *Koster v. P & P Enters., Inc.*, 539 N.W.2d 274, 278 (Neb. 1995); *Hatcher v. Bellevue Volunteer Fire Dep't*, 628 N.W.2d 685, 696 (Neb. 2001) ("Our case law thus clearly reveals that one can be vicariously liable for one's role in a civil conspiracy only if there is liability for an underlying tort.").  Merrell has not alleged that any of the Defendants committed an independent tort.  Even if Merrell had, he has failed to point to any evidence indicating the Defendants engaged conduct to accomplish an unlawful or oppressive purpose.  Therefore, to the extent Merrell has asserted a civil conspiracy claim under Nebraska law, his claim will be dismissed.

17

> (1) the existence of a civil conspiracy; (2) that the purpose of the conspiracy was to deprive h[im] either directly or indirectly of h[is] civil rights; (3) that a conspirator did an act in furtherance of the object of the conspiracy; and (4) damages, shown by demonstrating either injury to person or property or the deprivation of a civil right.

*Mettler v. Whitledge*, 165 F.3d 1197, 1206 (8th Cir. 1999).  The first element "requires evidence of specific facts that show a 'meeting of minds' among conspirators."  *Barstad v. Murray Cnty.*, 420 F.3d 880, 887 (8th Cir. 2005).  "Speculation and conjecture are not enough to prove a conspiracy exists."  *Mettler*, 165 F.3d at 1206.

In his opposition brief, Merrell points only to five alleged agreements that he believes support his conspiracy claims, all of which relate to the alleged inadequacies revolving around his suspension and pre-suspension hearing.  (*See* Pl.'s Br., Filing No. 72 at CM/ECF pp. 22-23.)  He has not, however, pointed to any evidence of specific facts that show a meeting of the minds among any of the Defendants, nor any evidence indicating these inadequacies were intentional or committed for the purpose of violating his civil rights.[14]  Therefore, the Defendants' Motion will be granted to the extent they seek summary judgment with respect to Merrell's conspiracy claim.

## CONCLUSION

No reasonable trier of fact could find in favor of Merrell on any of his three claims. Therefore, the Defendants' Motion for Summary Judgment will be granted, and Merrell's Second Amended Complaint will be dismissed, with prejudice.  Accordingly,

---

[14] The Court also notes that a conspiracy "requires at least two persons," and because a government entity and its agents are considered "a single person in the eyes of the law," to establish a civil conspiracy, to show government agents engaged in a conspiracy with each other or the government agency itself, a plaintiff is required to show that the government agents, "at the time of the conspiracy, act[ed] beyond the scope of their authority and for their own benefit."  *Barstad*, 420 at 887; *see also Koster*, 539 N.W.2d at 279 (quoting *Wiekhorst Bros. Excavating & Equip. Co. v. Ludewig*, 529 N.W.2d 33, 40 (Neb. 1995)) ("[a] corporation cannot conspire with an agent when the agent is acting within the scope of his or her authority.").  It does not appear that Merrell has pointed to any evidence of specific facts showing that, any time relevant to this action, any of the individual Defendants were acting beyond the scope of their authority and for their own benefit

IT IS ORDERED:

1.    The Defendants' Motion for Summary Judgment (Filing No. 65) is granted;

2.    The Plaintiff's Second Amended Complaint (Filing No. 63) is dismissed
      with prejudice; and

3.    A separate judgment will be entered.


Dated this 2nd day of August, 2013.

                                        BY THE COURT:


                                        s/Laurie Smith Camp
                                        Chief United States District Judge